IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> KIASHA THOMPKINS, <br><br> Defendant. | Case No. CR13-0004 <br><br> ORDER FOR PRETRIAL DETENTION |

On the 12th day of February, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Dan Chatham. The Defendant appeared personally and was represented by her attorney, David Nadler.

## I. RELEVANT FACTS AND PROCEEDINGS

On February 5, 2013, Defendant Kaisha Thompkins was charged by Indictment (docket number 4) with conspiracy to distribute heroin (Count 1), distribution of heroin (Count 3), and two counts of distribution and aiding and abetting the distribution of heroin (Counts 5 and 6). At the arraignment on February 8, 2013, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on April 15, 2013.

At the hearing, Marion Police Officer James Hancox testified regarding the circumstances underlying the instant charges.[1] On August 2, 2012, the Cedar Rapids DEA Task Force was contacted by the Southeast Iowa Inter-Agency Drug Task Force, seeking assistance in a controlled drug transaction involving individuals from Fairfield, Iowa and Cedar Rapids, Iowa. A confidential informant ("CI") drove with Isaac Knight, a co-defendant in this case, from Fairfield to Cedar Rapids to meet with Knight's heroin source.

---

[1] Hancox is currently assigned to the DEA Task Force in Cedar Rapids, Iowa.

1

Knight and the CI went to a laundromat parking lot in Cedar Rapids. Knight exited the CI's vehicle and got inside a red Ford Taurus, exited less than 5 seconds later, and returned to the CI's vehicle. Knight and the CI then drove back to Fairfield. The Cedar Rapids Task Force officers followed the red Taurus and identified Defendant as the driver and sole occupant of the vehicle. In Fairfield, the CI and Knight went to Knight's residence. Knight went into his residence, and later returned to the CI's vehicle and sold heroin to the CI. The CI told law enforcement that Knight went into his residence to cut the heroin before selling it to him.[2]

On November 2, 2012, Defendant was involved in another controlled drug transaction. A CI called Defendant to set up a controlled drug purchase. Officer Hancox drove the CI to a Taco John's restaurant in Cedar Rapids. En route to the restaurant, the CI called Defendant, and she told the CI to call "Teddy" — co-defendant Earnest Rhone — and provided the CI with Rhone's phone number. The CI called Rhone, and proceeded to the Taco John's parking lot. Rhone showed up in the red Ford Taurus, previously driven by Defendant in the August controlled drug transaction. The CI exited Hancox's vehicle, entered the Taurus, and returned to Hancox's vehicle with a package of heroin.[3]

On November 5, 2012, Defendant was involved in a third controlled drug transaction. A CI called Defendant and set up a meeting at a Cedar Rapids restaurant. The CI went to the restaurant parking lot. Defendant and Rhone arrived at the parking lot in the same red Ford Taurus from previous controlled drug transactions. The CI got into the back of the Taurus, placed $600 on the center console, and was given a package containing heroin.[4]

On November 13, 2012, Rhone was interviewed by law enforcement. Rhone told the officers that since April 2012, he had been going to Chicago, Illinois, approximately

---

[2] The entire controlled drug transaction involving Knight, the CI, and Defendant was recorded and surveilled by law enforcement.

[3] Once again, this controlled drug transaction was recorded and surveilled by law enforcement.

[4] This controlled transaction was also recorded and surveilled by law enforcement.

2

every three weeks to buy 50 grams of heroin to sell in Cedar Rapids. Rhone stated that Defendant would ride along with him to Chicago, but was not present when he obtained the heroin from his source in Chicago. In the same interview, however, Rhone told officers that he and Defendant sold heroin together, used the same phones, and had the same customers.

According to the pretrial services report, Defendant is 33 years old. She was born and raised in Chicago. She moved to Cedar Rapids about 10 years ago. She has one sister who lives in Cedar Rapids. Defendant has never been married, but she has two children from two separate relationships. Defendant had custody of her children until her arrest on the instant federal indictment. Since her arrest, a family acquaintance has been taking care of her children.

From January 3, 2013 to February 8, 2013, Defendant was employed at CCB Packaging in Cedar Rapids. Defendant resigned from that job and planned to start employment at NCS Pearson, Inc., until her arrest on the instant charges on February 8. Defendant is in good health and reports no mental or emotional health concerns. Defendant reported no history of alcohol abuse, despite a conviction for OWI. Defendant also told the pretrial services officer that in the past she smoked marijuana a "couple" times per week, but had not used marijuana for 3 years.

Turning to her criminal record, in 1997, at age 18, Defendant was charged in Cook County, Illinois, with criminal trespass to land. However, that charge was not prosecuted. In 1999, Defendant was charged with retail theft. That charge was stricken with leave to reinstate. In 2000, Defendant was again charged with retail theft. The disposition of that charge is unknown. In 2002, Defendant was charged with possession of marijuana. That charge was stricken with leave to reinstate.

On April 11, 2004, Defendant was convicted in Linn County, Iowa, of interference with official acts. On October 30, 2004, Defendant was charged and later convicted of a controlled substance violation. She was given a deferred judgment and 3 years probation. In December 2005, Defendant was found in contempt and sentenced to 30 days in jail. In

March 2006, she was found in violation of her probation and given a 10-year suspended prison sentence and 3 years probation. In October 2007, while on probation, Defendant was charged and later convicted of OWI and possession of a controlled substance. She failed to appear for a court proceeding, and a warrant for her arrest was issued. In March 2008, Defendant was found in contempt in her 2004 controlled substance charge, and sentenced to 15 days in jail. In July 2008, while still on probation, Defendant was charged and later convicted of interference with official acts. In June 2009, Defendant was discharged from her probation on the controlled substance charge.

In May 2010, Defendant was charged and later convicted of possession of a controlled substance, second offense. She failed to appear for a pretrial conference, and an arrest warrant was issued. The warrant was later recalled, and Defendant was given a 2-year suspended prison term and 2 years probation. In April 2011, while on probation, Defendant was charged and later convicted of possession of a controlled substance, third offense. She was given a 5-year suspended prison sentence and 3 years probation on the new charge. In January 2012, Defendant was found in contempt on the second possession charge, and sentenced to 30 days in jail. Her probation in the 2010 possession charge was discharged in March 2012. Defendant remains on probation for the 2011 possession charge.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves

4

an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of

residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to distribute heroin, distribution of heroin, and two counts of distribution and aiding and abetting the distribution of heroin. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, there is a rebuttable presumption in favor of detention. The weight of the evidence against Defendant is strong. On August 2, 2012, a CI and

Isaac Knight, a co-defendant in this matter, drove from Fairfield to Cedar Rapids to meet with Knight's heroin source. The CI and Knight met Defendant. Knight got into Defendant's vehicle, quickly returned to the CI's vehicle, and Knight and the CI returned to Fairfield. In Fairfield, Knight delivered heroin to the CI. On November 2, 2012, Defendant was involved in a second controlled drug transaction. A CI called Defendant to set up a purchase of heroin. The CI was instructed to go to a Taco John's parking lot. En route to Taco John's, the CI called Defendant again. Defendant told the CI to call "Teddy," Earnest Rhone, another co-defendant in this matter. Rhone showed up at Taco John's parking lot and sold heroin to the CI. On November 5, 2012, Defendant was involved in a third controlled drug transaction. A CI called Defendant and set up a meeting in a restaurant parking lot. Defendant and Rhone arrived at the parking lot, the CI got into their vehicle, and purchased heroin for $600. Additionally, Rhone was interviewed by law enforcement, and he admitted traveling to Chicago to obtain large quantities of heroin for distribution in Cedar Rapids. Rhone stated that he and Defendant both sold heroin in Cedar Rapids.

As a general proposition, the distribution of drugs constitutes a general danger to the community. The Court is particularly concerned with the distribution of heroin because its use often results in overdose and death. Defendant has multiple felony drug convictions. If convicted, Defendant faces a mandatory minimum 10-year prison sentence. This is a factor regarding the likelihood she will appear. Defendant also has a history of committing additional offenses while on probation and she was on probation at the time of these events. Additionally, Defendant has failed to appear for court proceedings on multiple occasions. Based on the serious nature of the offense, all of the facts and circumstances, and the rebuttable presumption, the Court finds that there is no condition or combination of conditions that will reasonably assure the safety of the community or Defendant's appearance for court proceedings. Therefore, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of her right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (February 8, 2013) to the filing of this Ruling (February 13, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 13th day of February, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA